UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-232 (JR) |
| v. | : | |
| NORRIS ROBERT MARTIN | : | |

GOVERNMENT'S PROFFER OF PROOF IN
SUPPORT OF DEFENDANT'S PLEA OF GUILTY

The United States of America submits the following proffer of proof in support of defendant's plea of guilty to Count Four of the Indictment in the above-captioned matter charging him with distribution of more than 50 grams of cocaine base, also known as crack.

*Elements of the Offense.*

The essential elements of the offense of distribution of more than 50 grams of a mixture and substance containing a detectable amount of cocaine base, also known as crack, in violation of 21 United States Code, §§ 841(a)(1) and 841(b)(1)(A)(iii), each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

1. That the defendant distributed a controlled substance.

Distribute means to transfer or attempt to transfer to another person. The government need not prove that the defendant received or expected to receive anything of value in return.

2. That the defendant distributed the controlled substance knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

The law makes cocaine base, also known as crack, which is smokeable, a controlled substance.

RECEIVED
DEC 21 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Count Four of the Indictment charges that the defendant, Norris Robert Martin, distributed more than 50 grams of cocaine base, also known as crack cocaine, and thus in order to make the defendant liable for sentencing enhancements set out in 21 United States Code, § 841(b)(1)(A)(iii), the United States would be required to prove beyond a reasonable doubt that on or about April 13, 2005, more than 50 grams of cocaine base, also known as crack cocaine, which is smokeable, was distributed by the defendant. *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

### *Penalties for the Offense*

The penalty for distribution of more than 50 grams of a mixture and substance containing a detectable amount of cocaine base, also known as crack, a Schedule II controlled substance in violation of 21 United States Code, § 841(a)(1), is set out at 21 United States Code, § 841(b)(1)(A)(iii). The maximum penalty, therefore, is:

(A) a term of imprisonment of not less than 10 years and not more than life;

(B) a fine not to exceed $4,000,000;

(C) a term of supervised release of at least five years, after any period of incarceration;

(D) a special assessment of $100.

U.S. Sentencing Guideline, § 5E1.2, permits the Court to impose a fine to pay the costs of imprisonment, term of supervised release, and period of probation.

### *Factual Proffer*

Had this matter gone to trial, the government's evidence would have established the following facts beyond a reasonable doubt.

1. The Indictment in this case arises out of an investigation conducted by the Major Narcotics Branch (MNB) of the Metropolitan Police Department (MPD) into drug trafficking and involved a series of sales of various quantities of crack cocaine by the defendant to a cooperating witness (CW) between March 11, 2005 and April 13, 2005.

2. On March 11, 2005, an individual who was cooperating with the MPD, (hereinafter referred to as CW, or cooperating witness), contacted Norris Robert Martin (hereinafter Martin) and arranged to purchase crack cocaine from him. Officer Fultz transported the CW to 7th & Q Streets, N.W., where officers searched the CW to make sure that it did not possess drugs. Officers gave the CW $1200.00 in pre-recorded MPD funds and watched it walk up to and enter a white Cadillac with DC tag BH 3909 at 7th & Q Streets, N.W. This vehicle is registered to Martin. Martin got into the driver's seat of the Cadillac and drove around the block. While inside the car, the back up officers followed the Cadillac around the block, never losing sight of it. The CW returned to the officers with one clear zip lock bag that contained seven individual large white/tan chunks of crack cocaine. This substance was ultimately submitted to the DEA Lab and was determined to be 26.2 grams of crack cocaine. Detective Witowski video taped the area but no filming was done inside the car.

3. On March 18, 2005, the CW contacted Martin and arranged to purchase crack cocaine from him. Officer Fultz transported the CW to 7th & Q Streets, N.W., where officers searched the CW to make sure that it did not possess drugs. Officers gave the CW $1200.00 in pre-recorded MPD funds and watched the CW walk up to and enter a Chinese carry out store in the area of 7th & Q Streets, N.W. Police had placed a audio/video recording device, (hereinafter referred to as the

hawk) on the CW to capture this transaction. The CW gave Martin $1200 cash and Martin gave the CW eight bundles of crack cocaine. The hawk camera picked up a glimpse of the drugs Martin sold to the CW during the transaction. Officer Fenton video taped the outside area of 7th and Q Streets, NW. The CW returned to the officers with the crack cocaine. This substance was ultimately submitted to the DEA Lab and was determined to be 25.8 grams of crack cocaine.

4. On April 1, 2005, the CW contacted Martin and arranged to purchase crack cocaine from him. Officer Fultz transported the CW to 7th & Q Street, N.W., where officers searched the CW to make sure that it did not possess drugs. Officers gave the CW $1200.00 in pre-recorded MPD funds and watched the CW walk up to and enter a white Cadillac (registered to Martin) in the area of 7th & Q Street, N.W. Officer Habeebullah videotaped the outside area and police placed the hawk audio and video recorder on the CW to record the transaction. The CW got into the Cadillac with Martin in the driver's seat and Martin made a U-turn at Rhode Island Avenue. Before the CW entered the car, it introduced Martin to an undercover officer (hereinafter referred to as UC). The UC remained on the street. The CW returned to the officers with one clear zip lock bag that contained six bundles of crack cocaine. This substance was ultimately submitted to the DEA Lab and was determined to be 25.2 grams of crack cocaine.

5. On April 13, 2005, the CW contacted Martin and arranged to purchase crack cocaine from him. Officer Fultz transported the CW to 7th & Q Street, N.W., where officers searched the CW to make sure that it did not possess drugs. Officers gave the CW $2400.00 in pre-recorded MPD funds and watched the CW, accompanied this time by an undercover officer (hereinafter UC) as they walked up to and entered Martin's car. Martin drove to 813 Q Street, NW, where the UC and the CW got out of the car after the transaction. The UC made the purchase and returned to the officers with one clear zip lock bag that contained sixteen bundles of crack cocaine. At the time of

the purchase, the UC wore a audio, video recording device. This substance was ultimately submitted to the DEA Lab and was determined to be 54.5 grams of crack cocaine. **(Total 131.7)**

6. On June 16, 2005, the defendant was arrested in this case at 2604 Central Avenue, NE, Washington, DC. During a search of his person incident to the arrest, officers discovered 28.0 grams of crack cocaine and $1,517 in US Currency. Martin was also found to be in possession of car keys for the white Cadillac, DC tag number BH-3909, and he gave officers permission to search the vehicle. A search of the vehicle revealed $3,450 in US Currency. At this time, defendant was informed that officers intended to execute a search warrant at his residence of 4913 Fitch Place, NE. When asked whether there was anything there that officers should know about, Martin stated that "there is some coke in a black bag in my bedroom." Officers executed a search warrant for Martin's residence at 4913 Fitch Place, NE. There they found 114.9 grams of crack cocaine, 63.1 grams of cocaine powder, one ziplock with 17 oxycodone tablets, two scales, and drug paraphernalia (including empty ziplocks, sifters, spoons, cutting agents, and razor blades). *The cocaine was found in a black bag in the bedroom. Officers also found a Smith and Wesson 9mm semi-automatic handgun, one black magazine with ammunition, one .25 caliber Raven semi-automatic handgun, one box of .25 caliber automatic ammunition,* and identification and mail matter for the defendant.

6. Seventh Street NW and Q Street NW, 2604 Central Avenue, NE, and 4913 Fitch Place, NE are addresses located in the District of Columbia. The suspected drugs purchased or seized in this investigation were submitted to the Drug Enforcement Administration's Mid-Atlantic Regional Laboratory where they were quantitatively and qualitatively analyzed by a qualified forensic chemist who would testify at trial to the quantities and controlled substances set out above in this Proffer. The total amount of crack cocaine sold by the defendant in this case is 131.7 grams. Including the amount of crack cocaine found at the time of the defendant's arrest, the total amount

of crack cocaine the defendant is responsible for here is 246.6 grams. A police detective from the Metropolitan Police Department who is an expert in the way that illegal controlled substances are sold, packaged, and used in the District of Columbia would testify that the cocaine base in this case was crack cocaine, capable of being smoked.

                Respectfully submitted,

                KENNETH L. WAINSTEIN
                UNITED STATES ATTORNEY

BY: _____
                WANDA DIXON
                Assistant United States Attorney

*Defendant's Acceptance*

I have read all Five (5) pages of the Government's Proffer of Proof and have discussed it with my attorney, Idus Daniel, Esquire. I fully understand this document and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully. I am pleading guilty because I am in fact guilty of the offenses charged.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in the plea agreement. I am satisfied with the legal services provided by my attorney in connection with my plea agreement and matters related to it.

Date: /2-21-05                          _____
                                        MARTIN NORRIS, Defendant


*Attorney's Acknowledgment*

I have read each of the Five (5) pages constituting the Government's Proffer of Proof, reviewed them with my client and discussed the provisions of the Proffer with my client, fully. These pages accurately and completely set forth the evidence as we understand it. I concur in my client's desire to plead guilty as set forth in the agreement.

Date: 12/21/05                          _____
                                        IDUS DANIELS, Esquire
                                        Attorney for the Defendant